HAWTHORNE, Justice.
 

 Plaintiff, Madeleine Stier, instituted this suit praying that her marriage to defendant, Charles E. Price, be decreed null, void, and of no effect. To her petition the attorney at law appointed curator ad hoc for the defendant husband filed an exception of no cause or right of action. The exception was sustained, and plaintiff’s suit dismissed. From this judgment she has appealed to this court.
 

 In her petition plaintiff alleges that she was married to defendant, Charles E. Price, on November 12, 1935, on which date she was wholly unaware that any impediment existed to her being united in lawful wedlock 'with the defendant; that her consent to the marriage was not free for the reason that she never would have consented to the marriage had she known that her husband was at the time insane and incapable of managing his own affairs and suffering from dementia praecox, simple type; further, that her husband was, due to his mental condition, incapable of giving his free consent to the contract of marriage.
 

 She further alleges that her husband has been suffering from dementia praecox, simple type, and incapable of managing his own affairs since October, 1929; that he was on four occasions admitted to the East Louisiana State Hospital at Jackson, Louisiana, for the first time on October 28, 1929, and also on three occasions after this date (two' of which were during the marriage) ; that on each occasion his disability was diagnosed by the medical staff of that institution as dementia praecox, simple type, and that at the time this suit was instituted he was an inmate of that institution although he has never been formally and legally interdicted.
 

 Plaintiff instituted this suit for the annulment of her marriage on May 8, 1947, almost -12 years after its celebration. The petition does not contain any allegation
 
 *397
 
 showing when plaintiff first ascertained the mental condition of her husband, nor does it allege that she has not freely and without constraint lived and cohabited with her husband after discovering his mental condition.
 

 Plaintiff contends (1) that her consent to the marriage was not free for the reason that she would never have consented to it had she known that defendant was, at the time of the marriage, insane and incapable of managing his own affairs and suffering from dementia praecox, simple type, and (2) that her husband was incapable of giving free consent to the contract of marriage. She cites some authorities from our sister states which her counsel argue support her contention, but has not cited to us, nor have we been able to find, any case in our jurisprudence decisive of the question.
 

 In Title IV, Chapter 4, of our Civil Code we find enumerated the specific grounds for the nullity of marriages, and plaintiff must bring herself within the strict provisions thereof in order to prevail in these proceedings.
 

 Article 110 of this chapter provides that marriages celebrated without the free consent of the married persons, or of one of them, can be annulled only upon the application of both parties or of that one whose consent was not free; that, when there has been a mistake in the person, the party laboring under the mistake can alone impeach the marriage. In Article 111 it is provided that in the cases embraced by the preceding article (110) the application to obtain a sentence annulling the marriage is inadmissible if the married persons have freely and without constraint cohabited together after recovering their liberty or discovering the mistake.
 

 Appellant contends that she comes within the provisions of Article 110 because her consent was not free since, at the time she contracted her marriage with the defendant, she did not know of his alleged insanity, and, had she known, she would not have consented to the marriage.
 

 For the meaning of “free consent” as expressed in Article 110, we must look to Article 91 of the Civil Code, which provides that no marriage is valid to which the parties have not freely consented. This article further provides that consent is not free:
 

 “1. When given to a ravisher, unless it has been given by the party ravished, after she has been restored to the enjoyment of liberty;
 

 “2. When it is extorted by violence;
 

 “3. When there is a mistake respecting the person whom one of the parties intended to marry.”
 

 Accepting the allegations of plaintiff’s petition as true, as we must for the purpose of considering the exception urged herein, we think that she is not entitled to have the marriage annulled because she does not bring herself in this proceeding
 
 *399
 
 under any of the grounds or reasons set forth in our Code for the nullity of marriages.
 

 Although she states that her consent was not free for the reason that she would not have consented to the marriage had she known that her husband was at that time insane, nevertheless she willingly and of her own free will and accord consented to the marriage at the time of its celebration, and the “lack of consent” which she now urges is not the “lack of consent” contemplated by the Code.
 

 In the case of Delpit et al. v. Young, 51 La.Ann. 923, 25 So. 547, 550, plaintiff sought to have his marriage annulled on several grounds, one of which was that, in consenting to the marriage, he was deceived and imposed upon and was in error as to the person whom he was marrying, in that she represented herself, and he believed her, to be a virtuous woman, whereas, as he was informed after the marriage, she had previously had illicit connections with divers persons. We think that what was said in that case is applicable here:
 

 “ * * * we think that, if the general assembly had intended that marriages should be annulled when the one party mistakes the character, the social standing, the pedigree, the acquirements, the pecuniary means, the habits, the temperament, or the religion of the other, or when the one party, after the marriage, discovers ‘redhibitory’ vices in the other, some language, beyond the words ‘mistake respecting the person,’ would have been found to express that intention. If the marriage of a'woman is to be annulled because she was unchaste before marriage, what is to be done in the case of a man? If the courts are to determine whether the mistake is sufficiently serious, how are they to deal with people who, having united themselves together ‘for better, for worse, in sickness and in health,’ etc., present a case where the one develops hereditary disease, such as consumption or insanity, of the possibility of which the other was ignorant, or becomes confirmed in a pre-existing alcohol or opium habit, of which the other had no knowledge? No such doctrine as that propounded by the learned counsel for the appellant has as yet found a place in our jurisprudence, and the language of our Code interpreted according to familiar canons of construction, does not justify its introduction.”
 

 As to plaintiff’s contention in regard to the lack of consent on the part of the husband, if he did not consent to the marriage due to his mental condition, under the provisions of Article 110 he or his legal representatives are the only persons who can be heard to complain.
 

 We have concluded that the exception of no cause or right of action was well taken and that the judgment of the lower_ court maintaining it and dismissing plaintiff’s suit was correct on the issues as pre
 
 *401
 
 sented herein — that is, the want of consent on the part of the parties to the marriage.
 

 For the reasons assigned, the judgment appealed from is affirmed; plaintiff-appellant to pay all costs.
 

 MOISE, J., recused.