262 So.2d 111 (1972)
Rita Nell Foster McKEE, Plaintiff-Appellant,
v.
Bob McKEE, Defendant-Appellee.
No. 11838.
Court of Appeal of Louisiana, Second Circuit.
April 24, 1972.
Rehearing Denied May 23, 1972.
*112 John E. Lawhon, Shreveport, for plaintiff-appellant.
Bob McKee, in pro. per.
Before AYRES, BOLIN, and HALL, JJ.
En Banc. Rehearing Denied May 23, 1972.
AYRES, Judge.
In the institution of this action, plaintiff initially sought from the husband a judgment of separation based upon charges of cruelty. In an amended petition, plaintiff sought to have the marriage between her and the defendant annulled on an alleged basis of her mistaken identity of the person she married. In the alternative, plaintiff sought a divorce for the reason that defendant has been convicted of a felony and sentenced to imprisonment at hard labor in a state penitentiary. On trial, on a confirmation of a default, plaintiff was granted a decree of separation "a mensa et thoro" from defendant; the community of acquets and gains between plaintiff and defendant was dissolved. Plaintiff's demands for the annulment of the marriage or for a divorce were rejected. From that portion of the judgment so rejecting plaintiff's demands, she appealed.
We find no basis for plaintiff's claims for a divorce. The evidence with respect to defendant's conviction of a felony and his subsequent sentence to imprisonment at hard labor are shown only by an FBI report. This evidence, denied by defendant, was hearsay in character and was therefore inadmissible. Moreover, the conviction and sentence were alleged to have preceded the marriage of these parties.
Plaintiff's only claim before the court meriting consideration is the demand for the annulment of the marriage, which was predicated, as heretofore noted, upon a contention that at the time she entered into marriage with the defendant she was mistaken in his identity, that is, that he was not the person with whom she intended to enter into a contract of marriage.
These parties were married in New Orleans on or about October 14, 1963, after which they moved to Caddo Parish and established their matrimonial domicile in the City of Shreveport. Because of defendant's violent and uncontrollable temper, which was eventually exhibited in an attempt to run into and over petitioner with an automobile, followed by an attempt to shoot her on or about July 8, 1971, plaintiff *113 and defendant separated. Through criminal proceedings instituted against defendant in the City Court of the City of Shreveport, it was allegedly learned that defendant had been convicted of the crime of robbery on or about November 19, 1952, in New Bedford, Bristol County, Massachusetts, and thereafter sentenced to the state penitentiary of that State at hard labor for a period of five years; and that defendant's real name was not Bob McKee, under which he married plaintiff, but was Robert Allen Weaver.
Under the laws of this State, marriage is considered in no other view than as a civil contract. LSA-C.C. Art. 86. However, the manner of contracting and celebrating marriages, the legal effects, the consequences thereof, and the manner in which marriages may be dissolved are prescribed and regulated by law. LSA-C.C. Art. 87. Thus, though marriage is a contract intended in its origin to endure until the death of one of the contracting parties, this contract may nevertheless be dissolved before the death of either of the parties for causes determined by law. LSA-C.C. Art. 89. Other than by death of one of the married persons, the law of this State in general prescribes that marriages may be terminated by divorce based upon, inter alia, conviction of the other spouse of a felony and his sentence to imprisonment at hard labor. LSA-C.C. Art. 139.
Consistent with the rules governing contracts in general, "No marriage is valid to which the parties have not freely consented." LSA-C.C. Art. 91. There it is further stated:
"Consent is not free: ...
"3. When there is a mistake respecting the person, whom one of the parties intended to marry."
Thus, the rule is that:
"Marriages celebrated without the free consent of the married persons, or of one of them, can only be annulled upon application of both the parties, or of that one of them whose consent was not free.
"When there has been a mistake in the person, the party laboring under the mistake can alone impeach the marriage."
LSA-C.C. Art. 110.
The record clearly establishes that plaintiff married the identical man whom she intended to marry. She was not mistaken with reference to his identity but only with reference to his name. Thus, the lack of free consent to the marriage of which plaintiff now complains is not the lack of consent contemplated by the aforesaid articles of the Revised Civil Code. The error, or lack of consent, contemplated by the codal provisions relates to the identity of a person and not to the quality, age, or name of the person with whom one has entered into a contract of marriage.
For instance, in Delpit v. Young, 51 La. Ann. 923, 25 So. 547, 550 (1899), plaintiff sought to have his marriage annulled on several grounds, one of which was that, in consenting to the marriage, he was deceived and imposed upon and was in error as to the person with whom he was marrying in that she represented herself to be a virtuous woman, whereas, as he was informed after the marriage, she had previously had illicit connection with divers persons. In the cited case, after reviewing earlier French authorities learned in the civil law, and from which our system comes, Justice Monroe, later Chief Justice of our Supreme Court, appropriately pointed out:

".... marriage, in the eye of the law, is purely and absolutely a civil contract. The law prescribes who may enter into it, how it may be entered into, and specifies the causes for which it may be annulled or avoided. Under these circumstances, it seems better to interpret our marriage law without the aid of criticism which is inappropriate to the *114 conditions under which it was enacted and to which it is intended to apply; and, so interpreting it, we think that, if the general assembly had intended that marriages should be annulled when the one party mistakes the character, the social standing, the pedigree, the acquirements, the pecuniary means, the habits, the temperament, or the religion of the other, or when the one party, after the marriage, discovers `redhibitory' vices in the other, some language, beyond the words `mistake respecting the person,' would have been found to express that intention.
"If the marriage of a woman is to be annulled because she was unchaste before marriage, what is to be done in the case of a man? If the courts are to determine whether the mistake is sufficiently serious, how are they to deal with people who, having united themselves together `for better, for worse, in sickness and in health,' etc., present a case where the one develops hereditary disease, such as consumption or insanity, of the possibility of which the other was ignorant, or becomes confirmed in a pre-existing alcohol or opium habit, of which the other had no knowledge? No such doctrine as that propounded by the learned counsel for the appellant has as yet found a place in our jurisprudence, and the language of our Code, interpreted according to familiar canons of construction, does not justify its introduction." (Emphasis supplied).
Thus, it was pointed out that the words "mistake in the person" as used in Articles 91 and 110 of the Revised Civil Code, which prescribe the causes for which marriages may be annulled, do not mean mistake in the character of the person, or in his or her attributes, condition in life, or previous habits.
Thus, it appears appropriate to observe that the vices and defects of a thing which constitute the object of a contract and thus constitute redhibition in the avoidance of a contract, because the object is rendered absolutely useless or its use so inconvenient and imperfect that it must be supposed the parties would not have entered into a contract with reference to it, have never been extended to the vices, or imperfections, of the parties to a contract of marriage. Nor do such imperfections, or vices, constitute a basis for an annulment of the contract of marriage. Nor is it sufficient that one of the parties to a contract of marriage discovers he or she was disillusioned as to some quality or character of the other, such as a misstatement of a proper name, to constitute a mistaken belief in the identity of the person.
See, also, Stier v. Price, 214 La. 394, 37 So.2d 847 (1948), which cited and quoted with approval from Delpit v. Young, supra. There it was held that the lack of consent based on the wife's lack of knowledge at the time of marriage that her husband was suffering from dementia praecox was not such lack of consent as contemplated by the statute permitting an annulment of the marriage when there is a mistake respecting the person of one of the parties to the marriage.
We conclude plaintiff had no mistaken belief in the identity of the person she married; that her mistaken belief as to his real name is insufficient to constitute a basis for an action of annulment of the marriage.
We find no error in the judgment appealed, which is now affirmed at plaintiff-appellant's costs.
Affirmed.